# Exhibit 1

JOHN C. KIRKE, #175055
jkirke@donahue.com
CHANCELLOR W. TSENG, #322236
CTseng@donahue.com
DONAHUE FITZGERALD LLP
Attorneys at Law
1999 Harrison Street, 26th Floor
Oakland, California 94612-3520
Telephone: (510) 451-3300
Facsimile: (510) 451-1527

Attorneys for Plaintiff,
BYTE BRIDGE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| BYTE BRIDGE, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>CURTIS H. BREVILLE, an individual; C.H. BREVILLE ENTERPRISES LLC, a Colorado limited liability company, dba IPE SOLUTIONS; and DOES 1-10, inclusive<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**1. TRADE SECRET MISAPPROPRIATION (DTSA)**<br><br>**2. TRADE SECRET MISAPPROPRIATION (CUTSA)**<br><br>**3. FALSE DESIGNATION OF ORIGIN (LANHAM ACT)**<br><br>**4. BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY**<br><br>**5. UNFAIR COMPETITION LAW**<br><br>**6. BREACH OF CONTRACT**<br><br>**7. INTENTIONAL INTERFERENCE WITH CONTRACT AND PROSPECTIVE ECONOMIC RELATIONS**<br><br>**8. NEGLIGENT INTERFERENCE WITH CONTRACT AND PROSPECTIVE ECONOMIC RELATIONS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Byte Bridge, Inc. ("Plaintiff" or "Byte Bridge"), a Nevada corporation, brings this action against Defendants Curtis H. Breville ("Defendant Breville" or "Mr. Breville") and C.H. Breville Enterprises LLC dba IPE Solutions ("IPE"), a Colorado limited liability company, and Does 1–10 (collectively "Defendants") for trade secret misappropriation and Lanham Act violations.

## NATURE OF THE ACTION

1. This is a trade secret misappropriation action against a technology company's former Vice President. With Defendant Breville's help as its employee in 2025, Byte Bridge created a Foundational Liquid Cooling Certification (FLCC) program and related training materials. Byte Bridge created and marketed the FLCC course as an industry offering to attract business from potential clients and partners. Byte Bridge developed and treated its FLCC program as a non-public trade secret. As Byte Bridge's employee, Mr. Breville assigned to Byte Bridge and relinquished all rights to the FLCC program, including its name and confidential materials.

2. After leaving Byte Bridge, Mr. Breville started a new company, IPE Solutions. IPE is now offering the identical FLCC program as its own. Mr. Breville's company is also targeting Byte Bridge's clients and partners. In 2026, Mr. Breville filed two infringing trademark applications for Plaintiff's FLCC program. He listed a 2025 first use in commerce date during his Byte Bridge employment and around the same time that Plaintiff officially launched its FLCC program. Mr. Breville's continued use and possession of Plaintiff's FLCC trade secret is misappropriation. His offering of the FLCC program as his own is also a Lanham Act violation. Byte Bridge seeks damages, including injunctive relief and exemplary damages.

## PARTIES

3. Plaintiff Byte Bridge, Inc. is a Nevada corporation with its principal place of business in Hayward, Alameda County, California. Plaintiff is a global IT solutions provider founded in Silicon Valley, and Defendant's former employer in 2025.

4. On information and belief, Defendant Curtis H. Breville is an individual residing in Adams County, Colorado. Defendant is Plaintiff's former employee and Vice President.

/ / /

/ / /

5. On information and belief, Defendant C.H. Breville Enterprises LLC dba IPE Solutions is a limited liability company formed in Colorado. On information and belief, IPE is an alter-ego of Defendant Breville, who owns and controls IPE.

6. On information and belief, the involvement of additional persons or entities are currently unknown to Plaintiff and are included herein as Defendants DOES 1–10. After investigation and discovery, Plaintiff will amend this Complaint and name them as defendants.

## JURISDICTION AND VENUE

### I. Subject Matter Jurisdiction

7. This Court has 28 U.S.C. § 1331 federal question jurisdiction. The gravamen of Plaintiff's Complaint and claims arise under the Defend Trade Secrets Act at 18 U.S.C. § 1836.

8. This Court also has subject matter jurisdiction under 28 U.S.C. § 1332. Plaintiff is a Nevada corporation in good standing with its principal place of business in California. Under well-established federal law and the "nerve center test", Plaintiff is deemed a Nevada and California citizen for diversity jurisdiction purposes. 28 U.S.C. § 1332(c)(1); *see also Harris v. Rand*, 682 F.3d 846, 851 (9th Cir. 2012) (adopting *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010)). On information and belief, Defendants are both Colorado citizens for diversity purposes. As discussed further below, Plaintiff seeks damages in excess of $75,000.00.

9. This Court also has 28 U.S.C. § 1367 supplemental jurisdiction over any claims not falling under original jurisdiction. All alleged claims arise from Defendant's theft of trade secrets and intellectual property infringement. These claims form the "same case or controversy", "derive from a common nucleus of operative fact," and are expected to be tried together. *Kuba v. 1-A Agr. Ass'n*, 387 F.3d 850 (9th Cir. 2004). This District Court continues to find original and supplemental jurisdiction for many recent federal trade secret theft cases with related state law claims. *See*, *e.g.*, *7EDU Impact Academy Inc. v. You*, 760 F.Supp.3d 981 (N.D. Cal. 2024); *Beluca Ventures LLC v. Einride Aktiebolag*, 660 F.Supp.3d 898 (N.D. Cal. 2023); *Albert's Organics, Inc. v. Holzman*, 445 F.Supp.3d 463 (N.D. Cal. 2020).

/ / /

/ / /

**II. Personal Jurisdiction**

10. This Court has specific personal jurisdiction over Defendant under the purposeful availment and purposeful direction theories. "A court may exercise specific personal jurisdiction over a nonresident defendant if (1) the nonresident defendant purposefully directs his activities at the forum or performs some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the plaintiff's claim arises out of the forum-related activities of the nonresident defendant; and (3) the exercise of jurisdiction over the nonresident defendant is reasonable." *Mulato v. Wells Fargo Bank, N.A.*, 76 F.Supp.3d 929, 944 (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).

11. While Defendant is currently a Colorado resident, his employment with Plaintiff effectively occurred within this District in California. Throughout his employment from February 3 to December 17, 2025, Defendant purposefully directed his employment activities towards California for the mutual benefit of Plaintiff and himself. Specifically and on multiple occasions, Defendant personally visited Plaintiff's California offices for client meetings and management conferences. Defendant worked directly with many of Plaintiff's California-based employees. Therefore, over the course of his 10-month employment, Defendant purposefully availed and directed himself to this District sufficient for this Court to establish specific personal jurisdiction.

**III. Venue**

12. Venue is proper in this District because Plaintiff resides in Alameda County, California. The alleged business relationship and development of misappropriated trade secrets between the Parties all occurred at Plaintiff's principal place of business in Hayward, California.

## FACTUAL ALLEGATIONS

13. Plaintiff is a global IT solutions provider with entities and service locations across six continents. Plaintiff possesses deep expertise in data centers and workplace solutions. Plaintiff helps organizations worldwide bridge technological gaps and scaling issues.

14. Defendant Breville is an individual and Colorado resident. From February 3 to December 17, 2025, Plaintiff employed Mr. Breville initially as its Global Pre-Sales Engineering

Manager – Systems and Cooling, then eventually as its Vice President of Data Center Cooling Programs and GTM.

15. At the start of Mr. Breville's employment, he reviewed and signed a standard "Employment and Confidentiality Agreement" dated February 3, 2025 (**Exhibit A**, "**Employment Agreement**"). Pursuant to the Employment Agreement, Mr. Breville specifically acknowledged that any "information with commercial value in the business in which Byte Bridge is engaged" is Plaintiff's "Proprietary Information." Emp. Ag. § 2.1. The Proprietary Information definition, which was given by way of illustration only, specifically included "trade secrets, ideas, processes…know-how…designs, innovations, techniques, business development strategies…" and "customer and supplier lists." Emp. Ag. § 2.2. Mr. Breville acknowledged that Plaintiff was and is the sole owner of all Proprietary Information, including its trade secrets and related intellectual property rights. Emp. Ag. § 2.3. Mr. Breville agreed to "keep all Proprietary Information confidential and not to disclose, reproduce, or use such information without prior written consent from Byte Bridge." Emp. Ag. § 2.4. Further, Mr. Breville assigned and transferred to Plaintiff any and all of his right, title, and interest acquired in the Proprietary Information and related intellectual property rights during his employment with Byte Bridge. Emp. Ag. § 2.5.

16. Within the same Employment Agreement, Mr. Breville agreed to give Plaintiff prompt written notice of his acquisition or creation of any Proprietary Information, and to execute documents to perfect Byte Bridge's ownership of such information. Emp. Ag. § 2.6. Mr. Breville also agreed to return all Proprietary Information he created or possessed to Byte Bridge upon employment termination. Emp. Ag. § 2.7.

17. Finally, Mr. Breville was given the opportunity to disclose and claim any prior inventions belonging to him before his employment with Plaintiff. Emp. Ag. § 4. Mr. Breville did not disclose any such inventions. Therefore, Mr. Breville does not have any claim of ownership over any Proprietary Information he developed during his employment with Plaintiff.

18. At the end of Mr. Breville's employment, he reviewed and signed a "Severance Agreement" dated December 17, 2025 (**Exhibit B, "Severance Agreement**"). Pursuant to the Severance Agreement, Mr. Breville agreed to not solicit any Byte Bridge client, customer, or

employee for a period of twelve (12) months. Sev. Ag. § 4. Mr. Breville also agreed to keep confidential all of Byte Bridge's trade secrets and Proprietary Information, which included "non-public business strategies, financial information, pricing, customer data, and internal operations." Sev. Ag. § 5. Collectively, Plaintiff's statutorily-defined trade secrets under the Defend Trade Secrets Act; California Uniform Trade Secrets Act; and Proprietary Information is referred herein as Plaintiff's "Trade Secrets."

19. In the course and scope of his employment as Plaintiff's former Vice President, Mr. Breville participated in management of the corporation. Mr. Breville would also exercise some discretionary authority on behalf of the company.

20. In the course and scope of his employment as Plaintiff's former Vice President, Mr. Breville also handled and helped develop Plaintiff's Trade Secrets. Such Trade Secrets often related to Plaintiff's industry technology. Specifically, Mr. Breville helped develop Plaintiff's Foundational Liquid Cooling Certification Program and its related materials ("FLCC"). Plaintiff developed the FLCC program as part of its commercial offerings for the benefit of Plaintiff's clients and potential customers. Mr. Breville did not disclose the FLCC as a prior invention in his Employment Agreement. Plaintiff treats its FLCC program as part of its Trade Secrets.

21. In 2025, Plaintiff made further investments into its FLCC program. Plaintiff commenced intellectual property protections and launched a dedicated FLCC program webpage on May 15, 2025.[1] Indeed, Mr. Breville's profile, including his own name, biography, and photo, was listed on Plaintiff's FLCC program webpage on September 14, 2025.[2] Mr. Breville used Plaintiff's name and the FLCC brand to promote Plaintiff and its FLCC program to the wider industry,

---

[1] BYTEBRIDGE FLCC™ (FOUNDATIONAL LIQUID COOLING CERTIFICATION), https://www.bytebt.com/foundational-liquid-cooling-certification/ (last visited July 23, 2026); *see also* WAYBACK MACHINE, https://web.archive.org/web/20250524101830/https://www.bytebt.com/foundational-liquid-cooling-certification/ (last visited July 23, 2026).

[2] WAYBACK MACHINE, https://web.archive.org/web/20250914152135/https://www.bytebt.com/foundational-liquid-cooling-certification/ (last visited July 23, 2026).

including potential customers. With Mr. Breville's knowledge, Plaintiff also began exploring potential trademarking options for its FLCC program in 2025. In fact, on May 6, 2025, Mr. Breville internally suggested to Byte Bridge's management that they "trademark[] FLCC so that nobody else can copy it and put out their own[.]"

22. After his employment ended, Mr. Breville launched his own company, Defendant IPE Solutions. In 2026, Mr. Breville, through IPE, began offering identical FLCC programs. As of July 23, 2026, IPE's website references "FLCC by IPE Solutions" and "Foundational Liquid Cooling Certification" programs.[3]

23. Shortly after leaving Byte Bridge, Defendants began targeting Plaintiff's customers and/or partners by offering them IPE's version of the FLCC program. On information and belief, Defendants targeted Plaintiff's customers by using Plaintiff's Proprietary Information he obtained from Plaintiff. Since launching IPE, Defendants have begun offering its version of the FLCC program to consumers, which consumers have actually taken. Plaintiff alleges that the damages it will suffer as to loss of business and goodwill will quickly and eventually exceed $75,000.00 if Defendants are not enjoined from profiting off of Plaintiff's Trade Secrets.

24. On January 30, 2026, Mr. Breville filed a trademark application for "Foundational Liquid Cooling Certification" with the United States Patent and Trademark Office ("USPTO").[4] This application is currently still pending before the USPTO with Serial #99626029. Mr. Breville is the listed owner and filed this application on an intent-to-use basis.

25. On February 1, 2026, Mr. Breville filed a trademark application for "Liquid Cooling Certification" with the USPTO.[5] This application is currently still pending before the USPTO with

---

[3] IPE SOLUTIONS, https://ipe-solutions.com/flcc/ (last visited July 23, 2026).

[4] Trademark Status & Document Retrieval ("TSDR"), Serial #99626029, USPTO, https://tsdr.uspto.gov/#caseNumber=99626029&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch (last visited July 23, 2026).

[5] TSDR, Serial #99627391, USPTO, https://tsdr.uspto.gov/#caseNumber=99627391&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch (last visited July 23, 2026).

Serial #99627391. Mr. Breville is the listed owner and filed this application on an in-use basis, with April 27, 2025 listed as the date of first use in commerce.

26. On February 13, 2026, Mr. Breville filed a trademark application for "FLCC" with the USPTO.[6] This application is currently still pending before the USPTO with Serial #99652700. Mr. Breville is the listed owner and filed this application on an in-use basis, with April 28, 2025 listed as the date of first use in commerce.

27. Therefore, by Mr. Breville's own sworn filings with the USPTO, Mr. Breville's claimed first use in commerce of the "Liquid Cooling Certification" and "FLCC" trademark began while he was Plaintiff's employee. Mr. Breville's claimed first use in commerce was a mere two weeks before he suggested to Plaintiff's management that Byte Bridge should trademark FLCC "so that nobody else can copy it and put out their own."

**FIRST CAUSE OF ACTION**

**(Defend Trade Secrets Act — 18 U.S.C. § 1836)**

**(Against all Defendants)**

28. Plaintiff realleges and reincorporates paragraphs 12–22 above.

29. Plaintiff owns the FLCC program, including its name and related program materials. The FLCC program is part of Plaintiff's Trade Secrets, as defined by 18 U.S.C. § 1836, *et seq*., because Plaintiff derives independent economic value from this information which is not generally known nor readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information, and Plaintiff has taken reasonable measures to keep such information secret. At all relevant times herein, Plaintiff's Trade Secrets was and is not generally known to Plaintiff's competitors in the industry or to the general public. Plaintiff developed and acquired its Trade Secrets and related pricing information, sales and business strategies, which all pertain to products used in or intended for use in interstate or foreign commerce.

/ / /

[6] TSDR, Serial #99652700, USPTO, https://tsdr.uspto.gov/#caseNumber=99652700&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch (last visited August 15, 2026).

30. Defendants misappropriated Plaintiff's Trade Secrets. At the very least, Defendants retained unauthorized copies of Plaintiff's Trade Secrets, which are confidential and proprietary. Defendants disclosed or used Plaintiff's Trade Secrets without Plaintiff's express or implied consent. At the time of Defendants' disclosure or use of Plaintiff's Trade Secrets, Defendants knew or had reason to know that the knowledge of the Trade Secrets was acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit its use. Defendants also may have used improper means to acquire knowledge of Plaintiff's Trade Secrets. Plaintiff's Trade Secrets are related to a product or service used in or intended for use in interstate or foreign commerce. Defendants' misappropriation and related actions have proximately and actually damaged Plaintiff. Defendants' misappropriation and related actions continue to damage Plaintiff to date.

31. On information and belief, Defendants have disclosed and intend to continue to disclose Plaintiff's Trade Secrets in violation of the Defend Trade Secrets Act.

32. As a further proximate result of Defendants' wrongful conduct and threatened misappropriation, Plaintiff has been irreparably injured and is threatened with additional and ongoing injuries as a result of recurring daily lost business and disrupted client relationships that might never be made whole again as a result of Defendants misappropriating Plaintiff's Trade Secrets. Because Plaintiff's remedy at law is inadequate, Plaintiff seeks temporary, preliminary, and permanent injunctive relief. Plaintiff is threatened with permanently losing goodwill, its clients, competitive advantage, and trade secrets in amounts which may not be possible to determine, unless Defendants are enjoined and restrained by order of this Court.

33. Defendants have been and will continue to be unjustly enriched by the misappropriation of Plaintiff's Trade Secrets and confidential and proprietary information, and, unless restrained, will continue to threaten to use, actually use, divulge, acquire and/or otherwise misappropriate Plaintiff's Trade Secrets and confidential and proprietary information.

34. Plaintiff is therefore entitled to damages for actual loss, damages for any unjust enrichment and any other monetary remedy allowable caused by the misappropriation of any trade secrets that is not addressed in computing damages for actual loss, pursuant to 18 U.S.C. §

1836(b)(3)(B).

35. On information and belief, Defendants' misappropriation and threatened misappropriation of Plaintiff's Trade Secrets has been willful and malicious. Thus, Plaintiff's trade secrets have been willfully and maliciously misappropriated, and Plaintiff is entitled to an award of exemplary damages of two times the damages it would otherwise be entitled to, pursuant to 18 U.S.C. § 1836(b)(3)(C), and its attorneys' fees in conjunction with this action.

**SECOND CAUSE OF ACTION**

**(California Uniform Trade Secrets Act — Civil Code §§ 3426, *et seq.*)**

**(Against all Defendants)**

36. Plaintiff realleges and reincorporates paragraphs 12–22 above.

37. At all relevant times, Defendants were in possession of Plaintiff's Trade Secrets as defined above and by California Civil Code § 3426 *et seq*. Plaintiff's Trade Secrets constitute proprietary business information that are trade secrets because Plaintiff derives independent economic value from that information, such information is not generally known nor readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and because the information is the subject of reasonable efforts to maintain its secrecy, including as described above. Plaintiff's Trade Secrets are not, and were not, generally known to Plaintiff's competitors, the industry or the general public.

38. On information and belief, Defendants have actually misappropriated, and threatens to continue to misappropriate, Plaintiff's Trade Secrets without Plaintiff's consent, in violation of California Civil Code § 3426 *et seq*.

39. On information and belief, Defendants have, at the very least, retained unauthorized copies of Plaintiff's Trade Secrets, including but not limited to proprietary and confidential information regarding the FLCC program, Plaintiff's business relationships, pricing information and sales production pertaining to products used in, or intended for use in, interstate or foreign commerce. As a result, injunctive relief is appropriate.

40. On information and belief, Defendants have disclosed, and intends to continue to disclose, Plaintiff's Trade Secrets and confidential information in violation of the California

Uniform Trade Secrets Act.

41. As a proximate result of Defendants' misappropriation and threatened misappropriation of Plaintiff's Trade Secrets, Plaintiff has suffered, and will continue to suffer, damages in an amount to be proven at the time of trial.

42. As a further proximate result of Defendants' wrongful conduct and threatened misappropriation, Plaintiff has been irreparably injured and is threatened with additional and ongoing injuries as a result of recurring daily lost business and disrupted client relationships that might never be made whole again as a result of Defendants' misappropriating Plaintiff's Trade Secrets. Because Plaintiff's remedy at law is inadequate, Plaintiff seeks temporary, preliminary, and permanent injunctive relief. Plaintiff is threatened with permanently losing goodwill, customers and suppliers, its competitive advantage, and its trade secrets in amounts which may not be possible to determine, unless Defendants are enjoined and restrained by order of this Court.

43. On information and belief, Defendants have been and will continue to be unjustly enriched by the misappropriation of Plaintiff's Trade Secrets, and, unless restrained, will continue to threaten to use, actually use, divulge, threaten to disclose, acquire and/or otherwise misappropriate Plaintiff's Trade Secrets.

44. Plaintiff is therefore entitled to damages for actual loss, damages for any unjust enrichment caused by the misappropriation of any trade secrets that is not addressed in computing damages for actual loss, and any other remedy allowable pursuant to the California Uniform Trade Secrets Act.

45. Plaintiff is informed and believes and, based thereon alleges that Defendants' misappropriation and threatened misappropriation has been willful and malicious. Thus, Plaintiff's Trade Secrets have been willfully and maliciously misappropriated, and Plaintiff is entitled to an award of exemplary damages of two times the damages it would otherwise be entitled to and its attorneys' fees in conjunction with the action pursuant to the California Uniform Trade Secrets Act.

/ / /

/ / /

/ / /

**THIRD CAUSE OF ACTION**

**(Lanham Act — 15 U.S.C. § 1125(a)(1))**

**(Against all Defendants)**

46. Plaintiff realleges and reincorporates paragraphs 12–20, 22–24 above.

47. At all times relevant herein, Plaintiff owned and owns a valid and protectable trademark for its Foundational Liquid Cooling Certification (FLCC) program. Plaintiff's FLCC trademark rights began as early as May 15, 2025, when Plaintiff officially launched its FLCC program.

48. At all times relevant herein, Defendants' prior and continuing use of the identical Foundational Liquid Cooling Certification (FLCC) trademark on his company, IPE Solutions' website, is likely to cause consumer confusion, deception, or mistake.

49. Therefore, Defendants' prior and continuing usage of the Foundational Liquid Cooling Certification (FLCC) trademark violates Section 43(a) of the Lanham Act's prohibition against false designation of origin, false advertising, and unregistered trademark infringement, at 15 U.S.C. § 1125(a).

50. As a proximate result of Defendants' false designation of origin and trademark infringement, Plaintiff is entitled to damages in an amount according to proof at trial consisting of actual damages; disgorgement of profits; treble damages for willful misconduct; attorneys' fees and costs of suit; injunctive relief; corrective advertising; destruction of all infringing materials; and all other statutory and available relief.

**FOURTH CAUSE OF ACTION**

**(Breach of Fiduciary Duty and Duty of Loyalty)**

**(Against Defendant Breville)**

51. Plaintiff realleges and reincorporates paragraphs 12–20 above.

52. Everything Defendant Breville acquired by virtue of his employment with Plaintiff, except the compensation that was due to him from Plaintiff, belongs to Plaintiff, whether acquired lawfully or unlawfully, or during or after the expiration of the term of his employment under California Labor Code § 2860.

53. While employed by Plaintiff, Defendant Breville had the duty to give Plaintiff preference before transacting any business similar to Plaintiff's for Defendant Breville or his business under California Labor Code § 2863.

54. Through the course and scope of his employment as Byte Bridge's former Vice President, Defendant Breville participated in management of the corporation and exercised some discretionary authority. At some level, Defendant Breville was involved in company policy-making functions; actively involved in significant corporation transactions; and was able to influence corporate policies and governance. Therefore, during his employment at Byte Bridge, Defendant Breville owed Plaintiff a fiduciary duty and duty of loyalty under California Labor Code § 28.

55. On information and belief, Defendant Breville breached his fiduciary duty and duty of loyalty to Plaintiff when he transferred his loyalty from Byte Bridge to himself, IPE Solutions, and/or another third-party before the end of his employment; when he failed to develop Byte Bridge's business before the end of his employment; and/or when he usurped Byte Bridge's corporate opportunities for himself, IPE Solutions, and/or another third-party before the end of his employment. Plaintiff makes these allegations based on Defendant Breville's actions: by his infringing trademark application's first in use designation of two weeks before Byte Bridge launched its FLCC program; and by Defendant Breville's targeting of Plaintiff's customers and/or partners.

56. As a proximate result of Defendant Breville's breaches of his fiduciary duty and duty of loyalty, Plaintiff has been damaged and is entitled to damages in an amount according to proof at trial consisting of compensatory damages; disgorgement of profits; rescission and restitution; and/or punitive damages for any and all breaches involving malice, fraud, or oppression including Defendant Breville's conscious disregard of Plaintiff's rights.

## FIFTH CAUSE OF ACTION

**(Unfair Competition Law — Business & Professions Code §§ 17200, *et seq*.)**

**(Against all Defendants)**

57. Plaintiff realleges and reincorporates paragraphs 12–24 above.

58. The conduct alleged herein by each and every Defendant constitutes unfair and unlawful business practices in violation of California Business & Professions Code § 17200 *et seq*.

On information and belief, Defendants stole Plaintiff's Trade Secrets and, along with IPE Solutions, are using the stolen trade secret information to induce Plaintiff's customers, suppliers, partners, and potential partners to become customers, suppliers, and partners of Defendants. Defendants' alleged Lanham Act violations are also unfair and unlawful business practices.

59. On information and belief, Defendants knew that by violating the Lanham Act and stealing Plaintiff's Trade Secrets without express permission for the benefit of gaining new customers, suppliers and partners in violation of the terms of their respective valid employment agreements, they were engaging in unfair business practices in violation of California law, including in violation of California Civil Code §§ 3426 *et seq*. and the Defend Trade Secrets Act. Plaintiff is informed and believes and, based thereon, alleges that Defendants have used, and continue to use, Plaintiff's Trade Secrets unfairly and unlawfully, in violation of their responsibilities and obligations to Plaintiff, as well as basic principles of fair competition.

60. As a direct result of these concerted actions, Plaintiff has suffered monetary, competitive, and irreparable harm and Plaintiff should be awarded restitution of all profits received by Defendants, in the past and future, as a result of having engaged in the wrongful conduct that has and will harm Plaintiff.

**SIXTH CAUSE OF ACTION**

**(Breach of Contract)**

**(Against Defendant Breville)**

61. Plaintiff realleges and reincorporates paragraphs 12–24 above.

62. The Employment Agreement and Severance Agreement executed by Defendant Breville are both binding, valid, and enforceable contracts. The covenants and provisions contained in both agreements are reasonably necessary to protect legitimate protectable interests in Plaintiff's Trade Secrets, confidential and proprietary information, customer relationships, and goodwill.

63. Plaintiff fully performed all of its obligations under both agreements.

64. Defendant Breville breached and continues to breach both agreements by stealing Plaintiff's Trade Secrets for his own and/or IPE Solutions' competitive use and benefit against Plaintiff; disclosing and/or divulging Plaintiff's Trade Secrets; and failing to return Plaintiff's Trade

Secrets. Defendant Breville also breached and continues to breach the Employment Agreement by failing to execute documents to perfect Byte Bridge's ownership of such information, including, but not limited to, Byte Bridge's trademark rights in the Foundational Liquid Cooling Certification (FLCC) program.

65. As a result of any of these breaches, Plaintiff has been injured and sustained irreparable injury. Plaintiff is threatened with losing the value of its confidential Trade Secrets in amounts which are not possible to determine, given the numerous implications for current and future business, unless Defendant Breville is enjoined and restrained by Court order.

66. Plaintiff has been and will continue to be damaged by Defendant Breville's breaches of contract and is entitled to all recoverable damages in an amount to be proven at trial.

67. Defendant Breville's Employment Agreement expressly provides for the award of attorneys' fees to the prevailing party in a legal proceeding to enforce any rights arising therefrom. As a result of Defendant Breville's breaches of contract, Plaintiff has been forced to retain counsel and incur attorneys' fees and costs. Plaintiff is entitled to an award of attorneys' fees and costs according to proof.

## SEVENTH CAUSE OF ACTION

**(Intentional Interference with Contract and Prospective Economic Relations)**

**(Against all Defendants)**

68. Plaintiff realleges and reincorporates paragraphs 12–24 above.

69. At all times relevant herein, there were written and/or verbal contracts and/or relationships and/or potential relationships between Plaintiff and third-parties, including, but not limited to, customers, suppliers, current and/or former partners, that probably would have resulted in an economic benefit to Plaintiff. Defendants knew or should have known about the existence of these contracts and/or relationships between Plaintiff and its customers, suppliers, and current and/or former partners from Defendant Breville's employment at Plaintiff.

70. On information and belief, Defendants induced or attempted to induce Plaintiff's customers, suppliers, and current and/or former partners to work with Defendants instead of Plaintiff, using wrongful means. On information and belief, Defendants' interference has been

accomplished using wrongful means including, but not limited to, Defendants' wrongful use of misappropriated trade secrets, Plaintiff's Trade Secrets, and unlawful business tactics including the trademark infringement and Lanham Act violations above. Defendants' conduct was intended to disrupt the performance of Plaintiff's contracts and/or relationships. Defendants knew that disruption of performance of Plaintiff's contracts and/or relationships was certain or substantially certain to occur.

71. Defendants' actions caused actual interference with Plaintiff's contractual and/or prospective economic relationships, and caused Plaintiff to be damaged in an amount to be determined at the time of trial.

72. On information and belief, Defendants committed the acts alleged herein with knowledge of their wrongfulness, and with the intent to injure Plaintiff's business in conscious disregard of their legal obligations to refrain from such acts. In committing such acts, Defendants are guilty of malice, fraud and oppression, entitling Plaintiff to an award of exemplary and punitive damages in an amount appropriate to punish these Defendants and deter such conduct in the future.

**EIGHTH CAUSE OF ACTION**

**(Negligent Interference with Contract and Prospective Economic Relations)**

**(Against all Defendants)**

73. Plaintiff realleges and reincorporates paragraphs 12–24 above.

74. At all times relevant herein, there were written and/or verbal contracts and/or relationships and/or potential relationships between Plaintiff and third-parties, including, but not limited to, customers, suppliers, current and/or former partners, that probably would have resulted in an economic benefit to Plaintiff. Defendants knew or should have known about the existence of these contracts and/or relationships between Plaintiff and its customers, suppliers, and current and/or former partners from Defendant Breville's employment at Plaintiff.

75. On information and belief, Defendants induced or attempted to induce Plaintiff's customers, suppliers, and current and/or former partners to work with Defendants instead of Plaintiff, using wrongful means. On information and belief, Defendants' interference has been accomplished using wrongful means including, but not limited to, Defendants' wrongful use of

misappropriated trade secrets, Plaintiff's Trade Secrets, and unlawful business tactics including the trademark infringement and Lanham Act violations above. Defendants knew or should have known that disruption of performance of Plaintiff's contracts and/or relationships was certain or substantially certain to occur if Defendants failed to act with reasonable care.

76. Defendants committed the acts alleged herein without the requisite reasonable care, which caused actual interference with Plaintiff's contractual and/or prospective economic relationships, and caused Plaintiff to be damaged in an amount to be determined at the time of trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. Temporary, preliminary, and permanent injunctive relief to prevent Defendants from destroying the value of Plaintiff's Trade Secrets, compelling the return and destruction of Plaintiff's Trade Secrets, preventing Defendants from improperly using or disclosing Plaintiff's Trade Secrets in any way, and compelling Defendants to undertake all efforts consistent with returning Plaintiff's relationships with its customers, suppliers, and partners or potential partners to the status quo prior to the misappropriation and Lanham Act violations;

2. Actual and compensatory damages;

3. Unjust enrichment damages and disgorgement of profits;

4. Corrective advertising damages;

5. Rescission and restitution;

6. Declaratory relief that the FLCC program is Byte Bridge's trade secret;

7. A reasonable royalty;

8. Exemplary and treble damages under 18 U.S.C. § 1836(b)(3)(C); 15 U.S.C. § 1125(a); and California Civil Code § 3426.3(c);

9. Pre and post-judgment interest;

10. Attorneys' fees, witness fees, expert fees, and costs of suit; and

11. All such relief as the Court may deem just and proper.

/ / /

/ / /

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all triable issues, causes of action, and claims for which it has a constitutional, statutory, or other right to jury trial, including specifically all claims for compensatory damages and monetary relief pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: August 19, 2026

DONAHUE FITZGERALD LLP
Attorneys at Law

By: /s/ Chancellor W. Tseng
John C. Kirke
Chancellor W. Tseng
Attorneys for Plaintiff,
BYTE BRIDGE, INC.